[No. 4,121.]

MARIE DE LAURENCEL and ANGLIQUE DE LAU- |48 581|79 427| RENCEL, by GUSTAVE DUSSOL, their Guardian, *v.* ROMAIN CORNEILLE DE BOOM, ALBERT DE BOOM, URSULE VAN BRANTEGHEM, FANNY DE BOOM, LOUISE VICTORINE BOUSCATIER, LEON LEGAULT, MARIE LEGAULT, LEON DE LAURENCEL, and THE SPRING VALLEY WATER WORKS.

When a Legatee becomes a Trustee.—If the testator, after making a will in which he devises all his property absolutely, writes a letter to the legatee, stating the trusts upon which the testator intended to devise the estate, and explaining how the legatee was to execute the trusts, and the legatee, during the life-time of the testator, accepts in writing the terms of the trust, and promises to execute it faithfully, a trust is created as expressed in the letter, and a Court of equity will compel the legatee to execute it.

Appeal from the District Court, Fourth Judicial District, City and County of San Francisco.

Jean Corneille De.Boom resided in the city of Paris, Republic of France, and was the owner of an undivided one half of real estate in the city and county of San Francisco, and also owned two hundred and fifty shares of the stock of the Spring Valley Water Works, a corporation which supplied the city and county of San Francisco with pure water. On the 4th day of December, 1869, said Jean Corneille made his will, which was executed according to the law of California concerning wills, in which he devised all of his property to his nephew, Romain Corneille De Boom. On the day of the execution of the will, the testator wrote a long letter of instructions to the legatee. The letter was dated "Paris, 4th of December, 1869," and was ˙ addressed, "To my nephew Romain Corneille De Boom." This letter of instructions recited all the property which the testator owned, both in Europe and California, and stated the income derived from it, and explained how the income was to be used for ten years after the testator's death; and in-

structed said Romain how to dispose of the property, and to whom to distribute it, and for whom he was to hold it in trust. The letter of instructions made provision for the testator's servants, and made the children of a sister and of a brother heirs. At the bottom of. the letter was the following writing, signed by the legatee:

" I have read this letter, written and signed by my uncle, Jean Corneille De Boom, dated Paris, fourth December, eighteen hundred and sixty-nine, and, being as a codicil to the will executed the same day in my favor, I bind myself to execute faithfully the last wishes of my uncle expressed in this codicil at the Chapelle en Serval, eighteenth of August, one thousand eight hundred and seventy-one. "

The testator died at Paris on the 21st day of September, 1870, The will was probated in the City and County of San Francisco, and after administration, the property in California was distributed to the legate Romain Corneille De Boom. The plaintiffs, who were minors, were daughters of a sister of the testator, and were made two of the heirs in the letter of instructions. They commenced this suit by their guardian, on the 22d of September, 1872. The complaint was in equity, and alleged a trust; and that the legatee, Romain, denied the trust and claimed the ownership in his own right of all the property, and was about to sell it, or a part of it, and asked that the legatee be compelled to execute the trust, and that he be enjoined from selling the trust property. A preliminary injunction was issued, which the defendant, Romain Corneille, moved to dissolve. The Court below denied the motion, and said defendant appealed from the order refusing to dissolve. The other defendants, except the Spring Valley Water Works, were heirs under the letter of instructions; some of whom lived in Europe, and who were made defendants because their consent to be made plaintiffs had not been obtained.

*T. H. Rearden* and *John F. Finn,* for the Appellant.

The instrument, in no sense, creates a trust cognizable by a Court of equity.

It was not in existence at the date of the will to which it is claimed to be supplementary; and is not referred to in the will in any manner.

The will bears date December 4th, 1869. The letter of instructions also bears date December 4, 1869, but was not completed on that day, and the declaration of the defendant bears date August 18, 1871.

In England, prior to 1837, when written wills of personal property were not required to be attested by witnesses, the Courts were inclined to hold any informal instrument executed by the testator with reference to the testamentary disposition of his personal estate as a will or codicil to a will of personal property, or as charging the legatee named in the will with the execution of a trust; but the Statute I., (Will IV., Ch. 40,) passed 1837, assimilated wills of real and personal property in the matter of ceremonial of execution, requiring the attestation of two witnesses to all wills; and under that statute, which is virtually the same as was the statute of our own State in the present case, all attempts to alter, or in any way to affect the disposition of property made in a will by any instrument not executed in conformity with the statute, and not referred to in the will, have failed.

Lewin, in his work on trusts, states the law and the reasons for it as follows:

"We must bear in mind that the absolute owner of property continues in himself both the legal and equitable interest; and when the Legislature enacts that no devise or bequest of property shall be valid without certain ceremonies, a testator cannot, by an informal instrument, affect the equitable any more than the legal estate, for the one is a constituent part of the ownership as much as the other. * * * If it be said that such expression of intention, though void as a devise or bequest, may yet be good as a declaration of trust, and, therefore, that where the legal estate of a freehold is well devised, a trust may be engrafted upon it by a single note in writing, the answer is, that a wide distinction exists between testamentary dispositions and declarations of trust. The former are ambulatory until the

death of the testator; but the latter take effect, if at all, at the time of the execution.

"And Mr. Justice Butler* observed, in *Habergham* v. *Vincent* (2 Ves. Jr. 209), 'a deed must take place upon its execution, or not at all; it is not necessary for a deed to convey an immediate interest in possession; but it must take place as passing an interest to be conveyed at the execution; but a will is quite the reverse, and can only operate after death.'

"We may, therefore, safely assume as an established rule, that if the intended disposition be of a testamentary character, and not to take effect in the testator's life-time, but ambulatory until his death, such disposition is inoperative, unless it be declared in writing, in strict conformity with the statutory enactments regulating devises and bequests."

And any papers made after the execution of the will, must be so executed that they may be probated as a revocation of the will, or as a codicil thereto, or they will have no effect. (Lewin on Trusts, 2d Am. Ed. Sec. 66; Perry on Trusts, Secs. 92–3; *Adlington* v. *Cann*, 3 Adk. 151; *Briggs* v. *Penny*, 3 De G. and Sm. 547; *Johnson* v. *Ball*, 5 Id. 85.)

*Edward J. Pringle*, for the Respondents.

The trust is established by the declaration in writing signed by the appellant. To this the appellant's only answer is the citation of cases to the effect that the instrument declaring the trust is no part of the will of the testator. Of course not. The trust is created by the declaration and subscription of the trustee, not by the declaration or subscription of the testator.

The will operates to vest the fee in the devisee, as a deed absolute on its face would do. The simultaneous or subsequent declaration of trust by the devisee is no more a part of the will or required to be executed by the testator as a will, than a declaration of trust by a grantee is required to be expressed in the deed by which the fee is carried to him.

If any consideration were needed to sustain the declaration of trust it is found in the manifest reliance by the tes-

tator, upon the promise of the devisee. But no consideration is necessary to a declaration of trust in writing signed by the trustee.. (Perry on Trusts, Secs. 82 and 96.)

In all the cases cited by the appellant, as in all cases we have found bearing on the question, the discussion assumes, as settled law, the validity of a declaration of trust signed by the party to be charged. And the cases go so far as to charge a party as trustee without his declaration, where he has accepted the trust under circumstances which would make it fraudulent for him to deny the trust. None of the cases or text-books doubt, that where he has signed a declaration, he is chargeable. The Court will find such to be the recognized law in the appellant's own case. (*Johnson* v. *Ball,* 5 De Gex and Smale, 85; also in the following: Perry on Trusts, Sec. 94. *Russell* v. *Jackson,* 10 Hare's Rep. 204; *Briggs* v. *Penny,* 8 Eng. Law and Eq. 232; *Strickland* v. *Aldridge,* 9 Vesey, Jr., 517; *Tee* v. *Ferris,* 2 Kay and Johnson, 357.)

The mistake of the appellant is in supposing that we are attacking the will, or varying the terms of it. We do not do so. The will has taken effect without disturbance, and has vested the legal title in the devisee. Now, we simply claim to affect him with the trust with which he has charged himself, by his written declaration, sufficient under the Statute of Frauds.

By the COURT:

The letter from the testator, Jean Corneille De Boom,. dated on the same day on which the will was executed, and directed to the defendant, Romain De Boom, the sole devisee under the will, explains the trust upon which the testator intended to devise the estate; and we are of opinion that when the defendant, during the life-time of the testator, accepted, in writing, the terms of the trust, and bound himself to execute it faithfully, this created a valid trust, which a Court of equity will enforce. The presumption is, that the testator would have revoked or modified the will, except for the fact that the defendant, by a solemn instrument, ac-

cepted the trust, and promised to execute it.   It would be a fraud upon the testator and upon *cestui que trusts* to permit the defendant to repudiate the trust, on the faith of which the estate was devised to him.

Order refusing to dissolve the injunction affirmed.